IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2001

## STATE OF TENNESSEE v. DARRIN FLEMING

**Appeal from the Criminal Court for Shelby County
Nos. 99-06817, 99-06818, 99-06819     James C. Beasley, Judge**

---

**No. W2001-00028-CCA-R3-CD - Filed December 17, 2001**

---

The defendant, Darrin Fleming, was convicted of aggravated burglary, assault, and criminal responsibility for facilitation of robbery. The trial court imposed an effective sentence of six years. In this appeal of right, the defendant contends that the evidence was insufficient to support his convictions for aggravated burglary and assault and that the trial court erred by refusing to give a special instruction on criminal responsibility. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Kevin E. Reed, Memphis, Tennessee, for the appellant, Darrin Fleming.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; and James Lammey, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

At approximately 1:30 A.M. on February 8, 1999, two men, one tall and one short, robbed Sam Riley at the residence he shared with his uncle, Herford Riley. The robbers kept their faces covered with their shirts during the entire incident. According to the victim, he recognized the voice of the taller of the two men as that of his niece's former boyfriend. The taller of the two robbers was later identified as the co-defendant, Prentiss Bowie. During the robbery, Bowie did all of the talking while the shorter robber said nothing.

Sam Riley testified that Felicia Webb had come to the residence earlier in the evening and asked to borrow some money from his uncle. When he told her he had no money, she left. Later, however, she returned and received permission to use the restroom. As she attempted to leave the residence, she unlocked the front door and the two robbers rushed into the house. The taller of the two men, Bowie, was carrying a chrome plated .38. When the taller man demanded money, Sam

Riley directed him to the pocket of a pair of pants that lay on the table. The shorter robber handled the weapon while the taller robber took the money from the pants.

After putting the money into his pocket, the taller robber forced the victim through the house and into a bedroom occupied by his uncle, Herford Riley. When Herford Riley claimed he had no money, the taller robber ordered the shorter robber to shoot him. Sam Riley, however, was able to convince the robbers to leave without harming Herford Riley.

After his arrest, the defendant was interviewed by Sergeant Bowles. Officer Jeff Clark, who was present during the interrogation, testified that the defendant admitted that he and Bowie had committed the robbery. The defendant informed police that he was unarmed, but acknowledged that Bowie carried a chrome .357 revolver into the residence. The defendant told officers that he and Bowie covered their faces with their shirts during the robbery. The statement provided by the defendant was read into evidence at trial.

Clarence Martin, who testified for the defense, stated that he was with Bowie, Felicia Webb, and the defendant on the night in question. He explained that the four went to the victim's house so that Webb could borrow some money to purchase marijuana. On their way, Martin overheard Bowie say that he intended to rob the victim. According to Martin, the defendant asked Bowie not to rob the victim due to his long-term friendship with the family. He explained that Webb, who walked ahead of the others, went into the house first to ask to borrow money and to use the restroom. Martin testified that as Webb was leaving the house, Bowie went inside but the defendant remained outside. He contended that Webb ran away from the house and he and the defendant ran after her. He stated that, a few minutes later, Bowie arrived and informed them that "he got him."

The defendant testified to essentially the same account as Clarence Martin. He claimed that the statement Officer Clark read to the jury was not the statement he gave during his police interview. He contended that before the interview began, Sergeant Bowles hit him in the face and spit on him. He testified that the police refused to let him read the statement and forced him to sign it. The defendant denied any involvement in the robbery and insisted that Bowie acted alone.

The jury convicted the defendant of aggravated burglary, assault upon Herford Riley, and criminal responsibility for facilitation of robbery of Sam Riley.

Initially, the defendant contends that the evidence is insufficient to support his convictions for aggravated burglary and assault. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v.

Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Aggravated burglary is defined as "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Tenn. Code Ann. § 39-14-403(a). Tennessee Code Annotated section 39-14-401 defines "habitation" as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code Ann. § 39-14-401(1)(A). Burglary is defined as follows:

> (a)  A person commits burglary who, without the effective consent of the property owner:
> * * *
> (3)  Enters a building and commits or attempts to commit a felony, theft or assault . . . .
> (b) As used in this section, "enter" means:
> (1)  Intrusion of any part of the body; or
> (2)  Intrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise.

Tenn. Code Ann. § 39-14-402. Thus, the state was required to prove that the defendant entered the residence and either attempted to commit or committed a felony, a theft or an assault.

The defendant contends that the evidence was insufficient because the state failed to prove that he actually entered the residence. He points out that Sam Riley was unable to identify him as one of the robbers and argues that Clarence Martin provided affirmative testimony that he never entered the residence.

In our view, the evidence was sufficient to establish aggravated burglary. Sam Riley testified that there were two robbers in the residence. Officer Clark testified that the defendant admitted his involvement. A confession is particularly compelling evidence. The jury chose to credit the witnesses offered by the state and reject the testimony offered by the defendant and his companion Clarence Martin. That was their prerogative.

Our analysis is the same with respect to the defendant's assault conviction upon Herford Riley. Assault is defined as follows:

> (a)  A person commits assault who:
> (1)  Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a). Sam Riley testified that the shorter robber had the gun in Herford Riley's bedroom when the robbers asked Herford Riley if he had any money. Moreover, Sam Riley testified that the taller robber, Bowie, ordered the shorter robber to shoot Herford Riley. Before trial, the defendant admitted to police that he and Bowie committed the offenses. In our view, the evidence is sufficient to support his conviction for assault.

The defendant next contends that the trial court erred by refusing to give his requested jury instruction on criminal responsibility. The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). Erroneous jury instructions require a reversal unless the error is harmless beyond a reasonable doubt. See Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

The defendant requested that the trial court add the following paragraph to Tennessee Pattern Jury Instruction 3.01:

The defendant is criminally responsible for offenses committed by the conduct of another if he associated himself with commission of the offense, acted with knowledge that the offenses were being committed, and shared in the criminal intent of the principal.

While the defendant may request special instructions, jury instructions are sufficient where they adequately state the law. See, e.g., State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980). When a trial court's charge to the jury is complete, it need not give additional special instructions requested by the defendant. See State v. Story, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980). Because the charge given correctly states the law as provided in Tennessee Code Annotated § 39-11-402 (2), the trial court did not err in denying the defendant's request. In fact, it is our observation that the trial court's charge to the jury was in substantial compliance with the special request of the defendant.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE